UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

CHARLES LEONARD HARRISON,

*Defendant.*

Case No. 98-cr-235-RCL-5

MEMORANDUM OPINION

After serving four years of his five-year term of supervised release, defendant Charles Leonard Harrison now moves *pro se* for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). ECF No. 934. The Government opposes the motion. ECF No. 937. Though Harrison's supervising probation officer in the Western District of North Carolina supports his request for early termination of supervised release, the U.S. Probation Office for the District of Columbia recommends the Court deny his motion, ECF No. 938. Upon consideration of Harrison's motion, ECF No. 934, the Government's opposition, ECF No. 937, the U.S. Probation Office's report, ECF No. 938, and the record herein, the Court will **DENY** Harrison's motion, ECF No. 934.

I. BACKGROUND

A. The Heroin-Trafficking Conspiracy

Beginning in 1995, a man named Nuri Lama began importing large quantities of high-quality heroin from Nepal, Hong Kong, China, and Thailand for distribution in the United States.

1

Presentence Investigation Report ("PSR") ¶ 14.[1] Lama would then sell the heroin to distributors in New York City and Washington, D.C. *Id.* at ¶ 17. One of the distributors who purchased heroin from Lama was a man named Walter Henry III, who co-owned a heroin-trafficking business with defendant Harrison. *Id.* at ¶ 17 n.6. Together, Harrison and Walter Henry III "made joint decisions on when and how much heroin to purchase from Lama." *Id.* After Walter Henry III would buy the heroin directly from Lama, Harrison would then dilute ("cut") the drug and deliver it to other co-conspirators so it could be sold to buyers in Washington, D.C. and Baltimore, Maryland. *Id.* at ¶ 18. When Lama eventually pleaded guilty, he admitted that between 1995 and 1998, he provided Walter Henry III with a total of ten to twelve kilograms of heroin. *Id.* at ¶ 21.

During the time Harrison worked with co-conspirators to purchase and distribute heroin, he carried a gun. *Id.* at ¶ 18 n.7. At one point, Harrison used it to threaten a store owner who supplied him with a cutting agent by showing the owner a pistol tucked into his waistband and telling the owner that someone could "get hurt" by "selling this bad stuff." *Id.*

**B. Procedural History**

A jury found Harrison guilty of conspiring to possess with intent to distribute and distributing one kilogram or more of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i) and aiding and abetting the same in violation of 18 U.S.C. § 2. PSR ¶ 8. At Harrison's sentencing, on March 20, 2001, the Court found Harrison responsible for conspiring to distribute over 30 kilograms of heroin. ECF No. 871 at 24. After adding four points for Harrison's leadership role in the drug-trafficking organization and two points for Harrison's possession of a gun in furtherance of the conspiracy, Harrison was given a total offense level of 44. *Id.* With a

---

[1] Harrison's PSR was prepared before the entries on the docket for this matter became available electronically. Accordingly, by separate Order today, the Court has directed the Clerk of Court to file an electronic copy of the PSR on the docket, subject to the appropriate access restrictions.

Criminal History Category of I, the Sentencing Guidelines provided a sentence of life imprisonment. PSR ¶ 57. The Court sentenced Harrison to life imprisonment, followed by five years supervised release (if he were ever released), and a $25,000 fine. ECF Min. Entry 3/20/2001.

Harrison appealed his conviction and sentence. ECF No. 503. The D.C. Circuit affirmed Harrison's conviction, but it vacated his sentence. *See United States v. Stover*, 329 F.3d 859, 863 (D.C. Cir. 2003) (per curiam). It held that the Court clearly erred by multiplying the quantity of heroin involved by four based on the assumption that the drug was diluted and sold at 20% purity. *Id.* at 873. Because of this fourfold multiplication, the D.C. Circuit explained, Harrison's base offense level under U.S.S.G. § 2D1.1 was improperly increased. *Id.* The D.C. Circuit thus vacated Harrison's sentence and remanded to this Court for a new drug-quantity calculation. *Id.*

At resentencing on August 12, 2004, the Court found Harrison responsible for 27.3 kilograms of heroin. *See United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir. 2007) (per curiam). This revised quantity put Harrison's base offense level at 36. *Id.* After adding the same four- and two-level enhancements, Harrison's total offense level was 42. *Id.* Based this revised total offense level, the Guidelines provided a range of 360 months' to life imprisonment. *Id.* The Court again sentenced Harrison to life imprisonment, followed by five years' supervised release. ECF No. 823 at 2–3.

Harrison appealed his sentence and conviction a second time. ECF No. 734; *see Henry*, 472 F.3d at 911. He argued in part that this Court violated *United States v. Booker*, 543 U.S. 220 (2005) when it applied the Guidelines in a mandatory fashion at resentencing. *Henry*, 472 F.3d at 912. The D.C. Circuit again affirmed Harrison's conviction but vacated his (re)sentence and remanded for a second resentencing. *Id.* It explained that, under *Booker*, this Court erred "by applying the Guidelines in a mandatory fashion to increase [Harrison's] sentence beyond that

3

which could have been imposed based solely on the facts found by the jury." *Id.* at 915. And, the D.C. Circuit held, the Court's error was not harmless beyond a reasonable doubt. *Id.*

At the second resentencing, on June 11, 2008, the Court again sentenced Harrison to life imprisonment plus five years' supervised release. ECF Min. Entry 6/11/2008. When Harrison appealed, the D.C. Circuit held that this Court "painstakingly complied with the procedural requirements of *Booker*" and that the sentence imposed was not substantively unreasonable. ECF No. 857 at 1. It thus affirmed Harrison's sentence of life imprisonment plus five years' supervised release. *See id.*

Nine years later, in 2017, President Barack Obama granted Harrison's application for an executive grant of clemency. *See* ECF No. 931. In so doing, President Obama commuted Harrison's sentence of life imprisonment but left his five-year term of supervised release intact. *Id.* After serving 18.5 years in prison, Harrison was released on May 19, 2017. *Id.* at 1. His term of supervision will expire on May 18, 2022. ECF No. 938 at 1.

### C. Harrison's Motion for Early Termination of Supervised Release

Four years into his five-year term of supervised release, Harrison now moves *pro se* for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). ECF No. 934.[2] Harrison gives a handful of reasons in support of his motion. He first notes that he has never been convicted of a violent crime and has no history of violence during or prior to his incarceration. *Id.* at 2–3. Harrison adds that since his release from prison, he has been a productive member of society. *Id.* at 2. He volunteers for a local nonprofit organization, is an active member of a church,

---

[2] In his motion, Harrison says he seeks relief under 18 U.S.C. § 3564(c). ECF No. 934 at 1. That provision, however, governs early termination of *probation*, not of supervised release. *See* 18 U.S.C. § 3564(c). Given that the substance of Harrison's motion seeks early termination of his five-year term of supervised release, and given that he is not represented by counsel, the Court construes his motion as seeking relief under 18 U.S.C. § 3583(e)(1). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

4

owns and operates his own transportation company, and spends quality time with his family. *Id.* Harrison even used his company vehicle to deliver COVID-19 testing kits and other supplies to hospitals and other facilities in his area. *Id.*

The Government opposes Harrison's motion. ECF No. 937. Though it does not believe he incurred any violations during his term of supervised release thus far, the Government argues that Harrison's "alleged good behavior and contributions to his community" are outweighed by the seriousness of his criminal conduct. *Id.* at 2. Harrison, the Government notes, was a "leader and organizer in a criminal organization involving the international shipment of kilogram quantities of high-grade heroin from outside the United States for local distribution." *Id.* The Government also argues that the seriousness of this conduct is compounded by the fact that Harrison carried a gun while trafficking heroin. *Id.*

At the Court's direction, the U.S. Probation Office responded to Harrison's motion. ECF No. 938. Because Harrison resides in Charlotte, North Carolina, he is currently under supervision by a probation officer in the Western District of North Carolina. *Id.* at 2. His supervising officer in North Carolina supports his request for early termination, noting that Harrison is employed as a truck driver and, as of April 2, 2021, has not been involved in any new criminal activity. *Id.* The U.S. Probation Office for this District, however, recommends that Harrison's motion be denied. *Id.* It states that although Harrison poses a low risk of reoffending, has no criminal record other than for the instant offense, and has complied with his conditions of supervised release thus far, the severity of his criminal conduct makes early termination inappropriate. *Id.*

## II. LEGAL STANDARD

Motions for early termination of supervised release are governed by 18 U.S.C. § 3583(e)(1). That section allows courts to terminate a term of supervised release early when two

conditions have been met and when certain enumerated factors set forth in 18 U.S.C. § 3553(a) support the early termination. 18 U.S.C. § 3583(e)(1); *accord United States v. Mathis-Gardner*, 783 F.3d 1286, 1287 (D.C. Cir. 2015). First, the defendant seeking early termination must have served at least one year of supervised release. 18 U.S.C. § 3583(e)(1). Second, the Court must be satisfied that the early termination is "warranted by the conduct of the defendant," and in "the interest of justice." *Id.* If these requirements have been met, the Court must consider whether an early termination is consistent with certain factors enumerated in § 3553(a). Those factors are:

> **(a)(1)** the nature and circumstances of the offense and the history and characteristics of the defendant
>
> **(2)** the need for the sentence imposed —
>
> . . .
>
> > **(B)** to afford adequate deterrence to criminal conduct;
> >
> > **(C)** to protect the public from further crimes of the defendant;
> >
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner
>
> . . .
>
> **(4)** the kinds of sentence and the sentencing range established for
>
> > **(A)** the applicable category of the offense committed by the applicable category of defendant as set forth in the [U.S. Sentencing Guidelines] . . . in effect on the date the defendant is sentenced;
>
> **(5)** any pertinent policy statement —
>
> > **(A)** issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(2)] subject to any amendments made to such a policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under [28 U.S.C. § 994(p)]); and
> >
> > **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced;
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see id.* at § 3583(1)(e) (listing the § 3553(a) factors courts must consider).

If a district court denies a motion for early termination of supervised release, it must explain its consideration of the relevant factors, unless the reasons for its denial are "discernible from the record." *Mathis-Gardner*, 783 F.3d at 1286–87.[3]

With these legal standards in mind, the Court now turns to the merits of Harrison's request.

## III. ANALYSIS

### A. Early Termination of Supervised Release Would Not Be in The Interest of Justice

As a threshold matter, Harrison has been on supervised release for more than one year. *See* ECF No. 938 at 1. The first requirement for early termination under § 3583(e)(1) has thus been met. *See* 18 U.S.C. § 3583(e)(1). But the same cannot be said for the second, as the Court finds that terminating Harrison's supervised release at this time would not be in "the interest of justice." 18 U.S.C. § 3583(e)(1).

As explained above, the Court sentenced Harrison to a term of life imprisonment, plus five years' supervised release. ECF No. 738. After serving 18.5 years of that sentence, President Obama granted him clemency and commuted the remainder of his life sentence. ECF No. 927 at 2. At the time of his release, Harrison was 54 years old and spared decades of his life in prison. *See* PSR 3. Given the vast sentence reduction Harrison has already been afforded, the Court finds that further reducing his sentence by terminating his term of supervised release one year early would not be in

---

[3] Section 3583(e)(1) further provides that a court may terminate a defendant's supervised release "pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation." 18 U.S.C. § 3583(e)(1). Rule 32.1(c), in turn, provides that "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing, at which the defendant has the right to counsel and an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(c)(1). A hearing is not required, however, if (a) the defendant waives the hearing, or (b) the relief sought is favorable to the defendant and does not extend the term of supervised release, and an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so. Here, because the Court is not terminating Harrison's term of supervised release, § 3583(e)(1) does not require a hearing on the motion.

7

the interest of justice. *See* 18 U.S.C. § 3583(e)(1). As President Obama chose to leave Harrison's five-year term of supervised release in place, a further reduction on top of the executive grant of clemency would be an undeserved windfall. *See* ECF No. 931.

## B. The Relevant § 3553(a) Factors Weigh Against Early Termination of Supervised Release

Even if the Court found that terminating Harrison's supervised release early was in the interest of justice and warranted by his conduct, it would nevertheless deny Harrison's motion, because it finds that the applicable § 3553(a) factors weigh against awarding him any sentence reduction. *See* 18 U.S.C. § 3583(e)(1). The Court will address each relevant factor in turn.

*First*, the "nature and circumstances of the offense" weigh strongly against the early termination of supervised release. 18 U.S.C. § 3553(a)(1). A jury found Harrison guilty of a serious drug crime: conspiring to possess with intent to distribute and distributing one kilogram or more of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i) and aiding and abetting the same in violation of 18 U.S.C. § 2. *Id.* at ¶ 8. Defendants found guilty of possessing with intent to distribute and distributing more than one kilogram of heroin must serve *at least* ten years in prison. *See* 21 U.S.C. § 841(b)(1)(A)(i). At most, they could serve life. *See id.* These significant terms of imprisonment reflect Congress's appreciation for the severity of the offense.

Moreover, the circumstances of the offense also weigh against the early termination of supervised release. Harrison played a leadership role in a criminal organization that trafficked significant quantities of heroin. Harrison and his partner, Walter Henry III, "made joint decisions on when and how much heroin to purchase from Lama." PSR ¶ 17 n.6. Walter Henry III would then buy directly from Lama, and Harrison would then dilute the drug with other substances and deliver it to other co-conspirators so it could be sold. *Id.* at ¶ 18. Together, Harrison and Walter Henry III were personally responsible for supplying large quantities of heroin to buyers in D.C.

8

and Baltimore. *Id.* In fact, Lama admitted to selling Walter Henry III a total of *ten to twelve kilograms* of heroin between 1995 and 1998. *Id.* at ¶ 21. Not only was Harrison personally responsible for trafficking a substantial amount of heroin, but he also carried a gun during this time. *Id.* at ¶ 18 n.7. On one occasion, he brandished the gun to threaten a store owner who sold him a "bad" cutting agent. *Id.* The serious nature of Harrison's crimes, coupled with his significant role in the criminal organization and possession of a firearm while trafficking heroin, weighs strongly against rewarding Harrison with the early termination of his supervised release.

*Second*, the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment" also weigh against the early termination of Harrison's supervised release. 18 U.S.C. § 3553(a)(2)(A). As explained above, Harrison was personally responsible for poisoning the D.C. and Baltimore communities with massive amounts of heroin. *See* PSR ¶¶ 17 & n.6, 18 & n.7. The severity of his crimes cannot be understated. Accordingly, granting Harrison's request for even a relatively minor sentence reduction would send a message that serious drug offenders like Harrison will not be held accountable for their full sentences. In so doing, reducing his sentence would fail to promote respect for the law. Nor would reducing the term of supervised release provide just punishment. This is especially true given that Harrison's sentence of life imprisonment was already reduced to 18.5 years by the executive grant of clemency. *See* ECF No. 927.

*Third*, the need to afford adequate deterrence does not tip the scales either way. *See* 18 U.S.C.§ 3553(a)(2)(B). On one hand, the Court finds it unlikely that Harrison himself will commit more crimes if released. Beside the instant offense, Harrison has no criminal record. ECF No. 938 at 2. And since his release from prison in 2017, Harrison has integrated himself into his community and become a productive member of society. He volunteers at a local non-profit, is an

active member of his church, owns a transportation company, and is employed as a truck driver. ECF No. 934 at 2; ECF No. 938 at 2. Indeed, at age 58, the U.S. Probation Office's post-conviction risk assessment puts him at "low risk" for recidivism. ECF No. 938 at 2. For these reasons, the Court finds that Harrison is not at risk of committing future crimes. Requiring him to serve his entire term of supervised release thus would not serve the purpose of specific deterrence.

On the other hand, the Court does find that requiring Harrison to serve his full term of supervised release serves as a *general* deterrence to other drug dealers. For the same reason that reducing Harrison's term of supervised release would fail to promote respect for the law and reflect the seriousness of the offense, it would likewise send a message to others that courts do not require serious drug offenders to serve their full terms of supervised release. Because these considerations of specific and general deterrence cut both ways, this § 3553(a) factor comes out neutral.

*Fourth*, because the Court finds it unlikely that Harrison will commit further crimes, requiring him to serve his full term of supervised release is not necessary to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

*Fifth*, the "kinds of sentence and the sentencing range" established by the U.S. Sentencing Guidelines for Harrison's offense weigh strongly against a sentence reduction. As noted above, the Guidelines provided a range of 360 months' to life imprisonment for Harrison's crime. *Henry*, 472 F.3d at 913. After serving 18.5 years of his life sentence, Harrison was granted clemency and released from prison. Though this is a substantial period of incarceration, Harrison's time served is still a *decade less* than the minimum term of imprisonment provided by the Guidelines. *See Henry*, 472 F.3d at 913. This fact weighs strongly against awarding Harrison a sentence reduction. Furthermore, the Guidelines also provided a range of five years' supervised release. *See* ECF No.

824 at 1. This further suggests that terminating Harrison's supervised release before he completes the five-year term would not be appropriate.

*Sixth*, the Court is not aware of any "pertinent policy statement" issued by the Sentencing Commission, as referenced in 18 U.S.C. § 3553(a)(5). This factor thus does cut either way.

*Seventh*, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" weighs in favor of an early termination of Harrison's supervised release. 18 U.S.C. § 3553(a)(6). As noted above, Harrison was tried with his partner in the heroin-trafficking conspiracy, Walter Henry III. PSR ¶ 8. In addition to finding Walter Henry III guilty of the conspiracy charge, the jury also found him guilty of two counts of unlawful possession with intent to distribute 100 grams or more of heroin. ECF Min. Entry 6/10/2004. The Court originally sentenced Walter Henry III to an aggregate term life imprisonment followed by five years' supervised release. ECF Min. Entry 3/12/2001. Walter Henry III's case then proceeded lock step with Harrison's through each of the three appeals discussed above. *See Stover*, 329 F.3d at 863; *Henry*, 472 F.3d at 912. Eventually, the D.C. Circuit affirmed Walter Henry III's second re-sentence of life imprisonment plus three concurrent terms of four years' supervised release. ECF No. 821 at 3–4; ECF No. 883 at 1. Like Harrison, Walter Henry III was also granted clemency by President Obama in 2017, thereby commuting his aggregate term of life imprisonment but leaving his aggregate four-year term of supervised release in place. ECF No. 927 at 1.

The fact that Walter Henry III was sentenced to an aggregate term of four years' supervised release weighs in favor of reducing Harrison's term to four years as well. The two worked hand in hand during the conspiracy; they "made joint decisions on when and how much heroin to purchase from Lama" and "organized and ran a heroin business" together. PSR ¶¶ 17 n.6 & 18 n.7. Given

the similarity in Harrison's and Walter Henry III's conduct in the conspiracy, and the fact that both defendants had a Criminal History Category of I, Walter Henry III's four-year aggregate term of supervised release supports Harrison's request for terminating his term one year early. *See Henry*, 472 F.3d at 912.

*Eighth*, there is no "need to provide restitution to any victims" in this case, so this factor has no impact on the Court's analysis. 18 U.S.C. § 3553(a)(7); *see* ECF No. 823 at 5.

On balance, the Court finds that even a relatively minor sentence reduction from five to four years' supervised release would not be proper in this case. Though Harrison's partner in the heroin-trafficking organization was sentenced to serve only four years of supervised release, this sentence disparity is just one of the relevant factors the Court must consider. ECF No. 821 at 3–4. Weighing *against* a sentence reduction is the seriousness of Harrison's offense, the fact that he played a prominent role in the heroin-trafficking conspiracy, the fact that Harrison was released after serving only 18.5 years of his life sentence, the sentencing range established by the Guidelines, and the fact that reducing his sentence would fail to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Given these considerations, the Court finds that terminating Harrison's supervised release early would not be consistent with the § 3553(a) factors.

## IV. CONCLUSION

For the reasons set forth above, the Court will **DENY** Harrison's *pro se* motion for early termination of supervised release, ECF No. 934. A separate Order consistent with this Memorandum Opinion shall issue contemporaneously.

Date: May 6, 2021

Hon. Royce C. Lamberth
United States District Judge